Kenneth A. BARTON, Plaintiff,

v.

SECURITIES INVESTOR PROTECTION CORPORATION, Defendant.

Adv. No. 94–3570.

United States Bankruptcy Court, D. New Jersey.

June 15, 1995.

As Amended July 6, 1995.

**982**

Kenneth A. Barton, Matawan, NJ, plaintiff pro se.

McCarter & English, William D. Wallach, Newark, NJ, for defendant Securities Investor Protection Corp.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### PROCEDURAL BACKGROUND

This matter comes before the court as a motion for summary judgment filed by defendant Securities Investor Protection Corporation ("SIPC"). Plaintiff originally filed a complaint in the district court seeking adjudication in federal court of a direct payment determination by SIPC under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.* Honorable Anne E. Thompson, the chief judge of the district court, transferred the case to the bankruptcy court as being the more appropriate tribunal.

This adversary proceeding was commenced in the bankruptcy court, and SIPC immediately moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). At a status conference held February 16, 1995, the parties agreed to have this matter heard on the submissions, as there was no disagreement as to what actually had occurred. In its scheduling order, this court directed the parties to file proposed findings of fact and memoranda of law. On March 17, 1995 SIPC filed its proposed findings of fact and memorandum of law in support of its motion for summary judgment. Plaintiff, Kenneth Barton, filed his response on April 11, 1995. Barton's response was styled a "Notice of Motion for Summary Judgment," which notice also set forth plaintiff's version of the facts. Since that response, however, was in violation of the scheduling order and the requested form, this court treated that response as proposed findings of fact and memorandum of law. Examining all of the factual assertions and affidavits by both parties, it is clear that there is no dispute as to any material fact.

This court has jurisdiction over the matter pursuant to 15 U.S.C. § 78fff–4(e) and 28 U.S.C. § 1334. *See also Barton v. Securities Investor Protection Corporation,* Civ. No. 94–3359, Slip. Op. at 3–4, 1995 WL 491057 (Hon. Anne E. Thompson, November 29, 1994).

### FACTS

Plaintiff, Kenneth Barton, had a securities account with his brokerage firm, Monmouth Investments, Inc. ("Monmouth"). Monmouth was a registered broker-dealer and a member of SIPC. Monmouth lacked the financial resources to meet the minimum net capital requirements of the Securities and Exchange Commission. *See* 17 C.F.R. § 240.15c3–1(a)(2)(i). Thus Monmouth could only make investment recommendations to clients and place orders for the purchase and sale of stock on behalf of the clients with a clearing agent. Monmouth relied on Securities Settlement Corporation ("SSC") to "settle" or execute the actual "trade" (purchase or sale of securities).

On November 22, 1988 plaintiff purchased 10,000 shares of Corporate Capital Resources ("CCRS") through Monmouth at 5/16th ($0.3125) for a total purchase price of $3,140. SSC issued a confirmation of this transaction and credited plaintiff's account with the purchase.

Four months later, on March 23, 1989, plaintiff visited Larry Zuliani, a principal of Monmouth, at Monmouth's Englishtown office. Plaintiff asked Mr. Zuliani to sell the 10,000 shares of CCRS at $1^{15}\!/_{16}$ ($1.9375) for a total price of $19,375. On that date, Mr. Zuliani alleges that he wrote a ticket to authorize the execution of the trade and brought it to the trading room for execution while Mr. Barton waited in the office. Before Mr. Barton left the office, Mr. Zuliani claims that he informed Mr. Barton that he had sold the 10,000 shares of CCRS at $1^{15}\!/_{16}$. However, Mr. Zuliani also acknowledges that he never received a confirmation of the trade from the clearing agent, SSC, and that SSC

failed to honor the ticket. The certification and letter of Mr. Zuliani, attached by plaintiff as exhibits to his pleadings, carefully avoid stating that the trade was actually executed. On March 29, 1989 Edwin Bell, plaintiff's account executive at Monmouth, tried to get a confirmation of the trade. He was told by Mr. Zuliani that the trade was executed. Mr. Bell, however, stated that he had "misgivings as to Mr. Zuliani's integrity." *Letter of Edwin Bell* (April 5, 1989).

Unbeknownst to plaintiff, Monmouth had made an unauthorized purchase of 20,000 shares of CCRS through plaintiff's account on March 20, 1989 at 2\%2 per share for a total price of $44,375. Plaintiff did not pay the $44,375 purchase price and the shares were liquidated by SSC on April 18, 1989 for a price of $11,063.69. To cover the deficiency, plaintiff's original 10,000 CCRS shares were also liquidated on April 18, 1989 at 3/8 ($0.375) for a total credit to plaintiff's account of $3,467. SSC produced confirmations for purchase and sale of the 20,000 shares as well as the April 18, 1989 sale of the 10,000 shares.

Plaintiff commenced a direct payment procedure with SIPC on April 8, 1993 seeking the full $19,375, the amount the 10,000 shares of CCRS would have realized had they been sold on March 23, 1989. SIPC denied the request for $19,375 and instead determined that plaintiff only was entitled to $3,467, the amount that the 10,000 shares of CCRS stock realized on April 18, 1989. SIPC did not hold plaintiff responsible for the unauthorized purchase of 20,000 shares of CCRS. On January 10, 1994, SIPC reconsidered plaintiff's claim and stood by the $3,467 award.

Dissatisfied with this resolution of his claim, plaintiff filed this complaint. Plaintiff alleges that he is entitled to the full $19,375 because the "sale" of his securities occurred on March 23, 1989 when he placed his order with Monmouth. SIPC argues that plaintiff is entitled to only $3,467, the "net equity" of his investments as defined by SIPA, since the sale of his securities did not occur until April 18, 1989, netting $3,467.

## DISCUSSION

### Standard for Summary Judgment

A motion for summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules ... 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate where "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable by Fed.R.Bankr.P. 7056. The court must view the record in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Whether a claimant is entitled to SIPA protection is a question of law. *SEC v. Albert & Maguire Securities Co., Inc.*, 560 F.2d 569, 571 (3rd Cir.1977); *In re Stalvey & Assoc. Inc. (SIPC v. Wise)*, 750 F.2d 464, 468 (5th Cir.1985). A movant is "entitled to a judgment as a matter of law" where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

In this case, the material facts are undisputed. The parties agree that plaintiff paid $3,140 for 10,000 shares of CCRS on November 22, 1988. The parties also agree that on March 23, 1989 plaintiff asked Mr. Zuliani of Monmouth to sell the 10,000 shares at 1\%6ths per share for a total price of $19,375. The parties further agree that SSC did not execute that sale; and that on April 18, 1989 the 10,000 CCRS shares were sold for $3,467. The only issue that remains is whether, as a matter of law, SIPA's customer protection provisions entitle plaintiff to $3,467, the amount the shares yielded on April 18, 1989, or whether plaintiff is entitled to $19,375, the amount which the shares would have yielded on March 23, 1989.

*Securities Investor Protection Act*

The Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), was passed by Congress in 1970 in the wake of the collapse of several brokerage houses in the late 1960's. *In re Brentwood Securities, Inc. (SIPC v. Pepperdine University)*, 925 F.2d 325, 326 (9th Cir.1991). The purpose of SIPA was to restore investor confidence in securities markets and prevent the " 'domino effect' involving otherwise solvent brokers that had substantial open transactions with firms that failed." *SIPC v. Barbour*, 421 U.S. 412, 415, 95 S.Ct. 1733, 1736, 44 L.Ed.2d 263 (1975). Through SIPA, Congress provided protection to investors that they would not suffer financial loss as a direct result of the insolvency of their stockbrokers. This protection is akin to that provided to bank depositors under FDIC. *SEC v. Aberdeen Securities Co., Inc.*, 480 F.2d 1121, 1123 (3rd Cir.1973) *cert. denied* 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973).

SIPA provides for two types of proceedings, a liquidation proceeding of the entire brokerage firm by SIPC, and a direct payment procedure. *Barton v. SIPC*, Slip. Op. at 3 (citing *In re Investment Bankers, Inc.*, 4 F.3d 1556, 1564–65 (10th Cir.1993)). Direct payment procedures are "cost-saving substitutes" of liquidation proceedings and involve the determination of a particular customer's claim by SIPC. *Barton v. SIPC*, Slip. Op. at 4. *See also* 15 U.S.C. § 78fff–4(a). This case involves a direct payment procedure.

In a direct payment procedure, SIPC is required to compensate a claimant the value of his or her account, which is its "net equity." 15 U.S.C. § 78fff–3(a). "Net equity" is determined by taking the dollar amount of funds in the account, excluding specifically identifiable property which is returned to the customer and deducting any indebtedness to the insolvent broker. *SEC v. Aberdeen Securities Co., Inc.*, 480 F.2d at 1123. If the insolvent broker does not have enough funds to cover the customer's claim, then SIPC will advance funds up to $500,000 per customer, of which no more than $100,000 represents reimbursement of cash, as opposed to securities. 15 U.S.C. § 78fff–2(b).

A party is not entitled to the above protection until it is determined that the claimant is a "customer" which SIPA defines as:

> The term "customer" of a debtor means any person ... who has a claim on account of securities received, acquired or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales ... The term "customer" includes any person who has a claim against the debtor arising out of sales ... of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities ... 15 U.S.C. § 78lll(2).

As noted by the Ninth Circuit, "[t]his definition embodies a common-sense concept: An investor is entitled to compensation from the SIPC only if he has entrusted cash or securities to a broker-dealer who becomes insolvent; if an investor has not so entrusted cash or securities, he is not a customer and therefore not entitled to recover from the SIPC fund." *In re Brentwood Securities, Inc.*, 925 F.2d at 327.

In this case there is no dispute that plaintiff was a customer with respect to SIPC's award of $3,467 based on the "net equity" or dollar value of plaintiff's account, less any indebtedness. Monmouth held 10,000 of plaintiff's shares of CCRS for safekeeping and with a view to sale. The shares "sold" or "settled" on April 18, 1989 for $3,467; and plaintiff has a claim against Monmouth arising out of that sale. Because Monmouth was insolvent and could not pay the claim, plaintiff is entitled to recover the $3,467 from SIPC.

*Failure to Execute the Sell Order*

Plaintiff seeks to recover $19,375, the sale price he demanded on March 23, 1989 when he asked his broker to sell the stock. Plaintiff argues that notwithstanding the fact that the clearing agent never executed the trade, that the "sale" took place when he placed the sell order with the broker and the broker confirmed it. Plaintiff further contends that the proceeds that his sell order would have generated had it been executed constitute a

"customer claim" within the meaning of SIPA.

 Customer status is afforded only to those claims that arise directly from a broker's insolvency. It does not protect customer claims based on breach of contract or fraud.[1] This interpretation is based upon SIPA's primary intent and policy which is to "protect customers who have cash and securities being held for them by a broker-dealer, rather than to serve as a vehicle for the litigation of claims ..." *In re Government Securities Corp.*, 90 B.R. at 540 (citing *SEC v. North American Planning Corp.*, 72 Civ. 3158 (Bankr.S.D.N.Y.1974)).

As to the failure to execute a sell order, numerous courts have held that "the failure to comply with a sell order does not result from the insolvency, but rather gives rise to a cause of action for breach of contract." *SEC v. Howard Lawrence & Co., Inc.*, 1 B.C.D. at 579; *SEC v. Investment Securities Corp.*, 2 B.C.D. at 454; *In re Government Securities Corp.*, 90 B.R. at 540; *SEC v. JNT Investors, Inc.*, 1978 Fed.Sec.L.Rep. at P 96,729. A test for whether a claim sounds in contract is whether the brokerage firm would have had to reach into its pocket to cover the difference between funds in the account and the amount of the claim. *In re MV Securities, Inc.*, 48 B.R. at 161.

In this case there is $15,908 difference between the amount in plaintiff's account ($3,467) and the amount of plaintiff's claim ($19,375) based on the March 23, 1989 sell order, which the broker would have to fund from its own assets as opposed to plaintiff's account. Plaintiff may have a claim against Monmouth (or perhaps SSC) for failure to execute the sell order.[2] However, plaintiff would have to bring that action against Monmouth, and if successful, plaintiff would be a general creditor entitled to payment out of Monmouth's general estate, but not SIPC's fund.

Plaintiff did not cite to any law in support of his proposition that the "sale" of securities occurred on March 23, 1989, when he placed the sell order with his broker. Plaintiff misunderstands the functioning of securities markets and the difference between a sell order and the execution of the trade. As explained above Monmouth did not have the authority to sell securities because it failed to meet SEC requirements. *See* 17 C.F.R. § 240.15c3–1(a)(2)(i). Monmouth simply took down sell order information from its client and then submitted a ticket indicating its client's request to the clearing agent. Securities are not sold until the clearing agent (SSC) finds a buyer and executes the trade. The fact that a Monmouth broker told his client that the sale occurred could be grounds for a cause of action against the broker, but it does not change the fact that the clearing agent never sold the securities.

This court also rejects plaintiff's alternative argument that the SIPC Series 500 Rules permit recovery of $19,375. 17 C.F.R. §§ 300.500–503. In particular plaintiff relies on 17 C.F.R. § 300.501(a)(2) which provides guidelines for SIPC in determining whether a customer's claim is a "claim for cash" or a "claim for securities." However, a threshold finding must be made that the claimant is a "customer" and has a "customer claim" before the 500 Rules apply to refine the type of customer claim at issue. Since this court has already found that plaintiff's claim for the $19,375 is a breach of contract claim and not a customer claim, the series 500 Rules do not apply because without "customer" status, plaintiff is not entitled to SIPA protection.

### CONCLUSION

For all of the above reasons, this court finds that as a matter of law, SIPC is entitled to summary judgment. Based upon the undisputed material facts, plaintiff is entitled to $3,467, which is the net equity of plaintiff's

---

**1.** *SEC v. S.J. Salmon & Co., Inc.*, 375 F.Supp. 867, 871 (S.D.N.Y.1974); *Matter of Oberweis Securities, Inc. (SIPC v. Oberweis)*, 135 B.R. 842, 844 (Bankr.N.D.Ill.1991); *In re MV Securities, Inc.*, 48 B.R. 156, 160 (Bankr.S.D.N.Y.1985); *Matter of Investors Security Corp.*, 6 B.R. 420, 424 (Bankr.W.D.Pa.1980); *SEC v. JNT Investors*, 72 Civ. 681, Fed.Sec.L.Rep. P 96,729 (S.D.N.Y. 1978); *In re Bell & Beckwith*, 124 B.R. 35, 36 (Bankr.N.D.Ohio 1990); *In re Government Secu-*

*rities Corp.*, 90 B.R. 539, 540 (Bankr.S.D.Fla. 1988); *SEC v. Howard Lawrence & Co., Inc.*, 74 Civ. 193; 1 B.C.D. 577, 578 (S.D.N.Y.1975); *SEC v. Investment Securities Corp.*, Civ. No. 74–760C, 2 B.C.D. 453, 454 (E.D.Mo.1976).

**2.** This court is not making any determination as to whether or not plaintiff has a cause of action against Monmouth.

account with Monmouth brokerage firm. Viewing the facts in a light most favorable to plaintiff, plaintiff's claim for $19,375 is invalid as a matter of law, because, the claim is based upon the failure to execute a sell order, which is a breach of contract claim not entitled to protection under SIPA. Counsel for SIPC shall submit an appropriate form of order within ten (10) days.