**In re A.R. BARON CO., INC., Debtor.**

**Bankruptcy No. 96–8831A(PCB) SIPA.**

United States Bankruptcy Court,
S.D. New York.

Oct. 16, 1998.

Hughes Hubbard & Reed LLP, New York City, By Daniel S. Lubell, Derek J.T. Adler, for James W. Giddens, Trustee.

Brian R.W. Jackson, pro se.

*MEMORANDUM DECISION UPHOLD-ING TRUSTEE'S DETERMINATION DENYING THE CLAIM AND OBJEC-TION OF BRIAN R.W. JACKSON*

PRUDENCE CARTER BEATTY,* Bankruptcy Judge.

In this Securities Investor Protection Act ("SIPA") liquidation proceeding, and in accordance with the procedures set forth by order of this court on July 29, 1996, James W. Giddens, as trustee (the "Trustee") of the liquidation of A.R. Baron & Co., Inc. denied a preferred SIPA status to a claim filed by Brian R.W. Jackson (the "Claimant"). The Claimant objects to this determination and by separate motion the Trustee seeks an

---

* Formerly known as Prudence Beatty Abram.

order upholding his findings and denying the Claimant's objection. For the reasons set forth herein, the Trustee's motion is granted.

### STATEMENT OF FACTS

1. From 1991 to 1996, A.R. Baron & Co., Inc. (the "Debtor") operated as a broker-dealer in securities. As such, it was subject to the regulatory jurisdiction of the U.S. Securities and Exchange Commission ("SEC") and the National Association of Securities Dealers and was a member of the Securities Investor Protection Corporation ("SIPC").

2. As a registered broker-dealer, the Debtor employed what is commonly referred to as a compliance officer whose job was to act as liaison to the securities regulatory agencies and to ensure that the Debtor was in compliance with their rules and regulations. This officer was not employed or placed on the Debtor's premises by any of the securities regulatory agencies either directly or indirectly.

3. The Debtor filed for reorganization under Chapter 11 of the Bankruptcy Code (the "Code") on July 3, 1996 in the United States Bankruptcy Court for the District of New Jersey. On July 10, 1996, SIPC commenced this proceeding by filing a complaint and application for a protective decree under SIPA in the United States District Court for the Southern District of New York. The complaint alleged that the customers of the Debtor were in need of the protections afforded under SIPA and sought appointment of a trustee to liquidate the business of the Debtor.

4. On July 11, 1996, the Honorable Loretta A. Preska of the United States District Court for the Southern District of New York, entered an order (the "Protective Order") pursuant to the provisions of Section 5(b) of SIPA, 15 U.S.C. § 78eee(b), finding, among other things, that the Debtor's customers were in need of the protections afforded by SIPA. The Protective Order appointed James W. Giddens as trustee for the liquidation of the business of the Debtor and removed the liquidation proceeding to the United States Bankruptcy Court for the Southern District of New York, where it was assigned to this judge on July 12, 1996.

5. Pursuant to SIPA § 78eee(b)(2)(B)(i) and Code § 742, the application for the Protective Order stayed the Debtor's Chapter 11 case in the District of New Jersey. By the grant of the Protective Order, the present SIPA proceeding has superseded that case. Pursuant to SIPA §§ 78fff(b) and 78lll(7)(a) the commencement date of this liquidation proceeding (the "Filing Date") relates back to the July 3, 1996 Chapter 11 filing by the Debtor in the District of New Jersey.

6. Shortly after his appointment, the Trustee was granted an Ex Parte Order on Application for Publication of Notices, Procedures for Resolution of Claims, and Other Relief dated July 29, 1996 (the "Housekeeping Order"). The Housekeeping Order was entered pursuant to SIPA § 78fff-2 and established the procedures governing the filing of claims against the Debtor and the Trustee's review, analysis, liquidation and payment thereof. Among other things, that Order directed each person holding a claim against the Debtor for customer property to file that claim with the Trustee by February 2, 1997.

7. The Housekeeping Order also directed the Trustee to review each such claim to determine whether all or any portion thereof is entitled to preferential treatment as a SIPA customer claim. Where the Trustee believed that such customer status was appropriate, the Order directed him to calculate the customer's net equity and notify the claimant by letter of his determination.

8. The Housekeeping Order also required that any customer who objected to the Trustee's determination file a written objection setting forth in detail the basis for the objection within 30 days of the date of the determination.

9. Shortly after entry of the Housekeeping Order, the Trustee sent notices and claim forms to over 4,000 former customers of the Debtor. The Trustee received a total of 554 customer claims and has issued determination letters with respect to 550 of them.[1] Of

---

1. The remaining 4 customer claims are claims by employees or insiders of the Debtor that are not entitled to SIPC coverage.

the 550 determinations, 385 customer claims have been allowed while 165 have been denied. Of the 165 customers whose claims have been denied, 25 filed timely objections to the Trustee's determination.[2] To date, two of the 25 objections have been withdrawn.

10. The Claimant, a British citizen and resident of Cyprus, was a customer of the Debtor. He filed a timely claim in which he asserted *inter alia* that because the Debtor failed to honor his written and verbal stop-loss instructions he suffered a loss of $138,812.50 which consisted of the decline in the market value of his securities between the time they should have been sold and the Filing Date.[3]

11. Over a year before the Debtor filed its Chapter 11 petition and on June 8, 1995, the Claimant sent a letter to the Debtor in which he gave standing instructions to the Debtor that his shares of Innovir common stock should be sold if the market price ever fell to $10.50 per share, and that his Innovir B warrants should be sold if the market price ever fell to $7.00 per share. *See* Trustee's Notice of Motion, Exhibit B.

12. The books and records of the Debtor show that in early June 1995, the securities in Claimant's account included 7,000 shares of Innovir Laboratories, Inc. common stock, then trading at approximately $12.00 per share, and 11,000 Innovir B warrants, then trading at a price upwards of $7.00 per share.

13. In July 1995 the market prices for the Innovir securities fell below the prices specified by the Claimant at which the securities should be sold. It is undisputed that the Debtor did not sell the Claimant's Innovir warrants and stock, and no written confirmation was ever issued reflecting a sale. The books and records of the Debtor show that the warrants remained in the Claimant's account on the Filing Date, some ten months later.

14. On March 13, 1997 the Trustee issued a determination denying the Claimant's claim as a claim for customer property, but allowing it as a general creditor claim. *See* Trustee's Notice of Motion Exhibit A.

15. The Claimant has filed a written opposition to the Trustee's determination (the "Objection"). The Objection is limited to the Trustee's refusal to recognize the Claimant's "failure to execute" claim as entitled to SIPC coverage as a customer claim. The Claimant does not object to the Trustee's factual determinations with respect to the cash and securities in his account on the Filing Date. *See* Trustee's Notice of Motion Exhibit B.

### DISCUSSION

*Securities Investor Protection Act* [4]

■ SIPA is a federal statutory scheme designed to afford limited financial protection to the customers of registered broker-dealers who experience financial difficulty. *See generally Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); 4 *Collier on Bankruptcy*, Intro. ¶ 741.07 (15th ed.1995). Congress enacted SIPA in response to customer losses that resulted from the failure of a number of broker-dealers in 1969 and 1970. *In re Adler Coleman Clearing Corp.*, 195 B.R. 266, 269 (Bankr.S.D.N.Y.1996); *Matter of Bevill, Bresler & Schulman, Inc.*, 83 B.R. 880, 886 (D.N.J.1988). In doing so, Congress sought to restore investor confidence in the securities markets and avoid a domino effect involving solvent brokers that had substantial open transactions with firms that had failed. *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *Barton v. Securities Investor Protection Corp.*, 182 B.R. 981, 984 (Bankr. D.N.J.1995). Thus, SIPA is designed to protect customers of registered broker-dealers who have entrusted those broker-dealers with cash or securities in the ordinary course of business. *In re Adler Coleman*, 195 B.R.

2. The deadlines for all customers to whom the Trustee has issued negative determinations to file their objections have expired.

3. This type of allegation is commonly referred to as a "failure to execute" claim, that is, a claim

for market losses resulting from a broker's failure to execute a customer's order.

4. 15 U.S.C. § 78aaa et seq.

at 269; *Matter of Oberweis Securities, Inc.,* 135 B.R. 842, 845 (Bankr.N.D.Ill.1991). In this respect, the protection offered customers under SIPA is akin to that provided to bank depositors by the Federal Deposit Insurance Corporation. *Barton v. Securities Investor Protection Corp.,* 182 B.R. at 984 (*citing SEC v. Aberdeen Securities Co., Inc.* 480 F.2d 1121, 1123 (3rd Cir.), *cert. denied sub nom. Seligsohn v. SEC,* 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973)); *In re Adler Coleman,* 195 B.R. at 269.

■ Notwithstanding the special protection afforded customers under SIPA, a SIPA liquidation is essentially a bankruptcy liquidation tailored to achieve the special purposes of SIPA. *SIPC v. Ambassador Church Finance/Development Group, Inc.,* 788 F.2d 1208, 1210 (6th Cir.1986) *cert. denied sub nom Pine Street Baptist Church V. SIPC,* 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986). SIPA § 78fff(b) provides that to the extent consistent with SIPA, "a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3 and 5 and subchapters I and II of chapter 7 of [the Bankruptcy Code]." [5]

*The Role of the Securities Investor Protection Corporation*

SIPA, initially adopted in 1970 and substantially amended in 1978, created the Securities Investor Protection Corporation ("SIPC"), a non-profit corporation, as the vehicle for achieving its statutory goals. *See SIPC v. Barbour, supra.* SIPA provides, among other things, that most securities brokers must be members of SIPC. *See* SIPA § 78ccc(a)(2). SIPA provides that SIPC members must contribute to the SIPC fund such assessments as SIPC imposes. *See* SIPA § 78ddd(c)(2). In the context of a liquidation proceeding, the SIPC fund is available for use *only* in connection with the

satisfaction of certain customer and broker-dealer claims and for the payment of administrative expenses. *See* SIPA § 78fff–3; *see also SIPC v. Ambassador Church,* 788 F.2d at 1210. The SIPC fund may not be used for payment of claims against the broker that do not fall within the narrow statutory scope of a "customer" claim. SIPA § 78fff–2(e); 17 C.F.R. Part 300.300; *In re Stalvey & Associates, Inc.,* 750 F.2d 464, 473 (5th Cir.1985); *see also SEC v. Packer, Wilbur & Co.,* 498 F.2d 978, 983 (2d Cir.1974). A customer is defined by SIPA as

> "any person * * * who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with collateral security, or for purposes of effecting a transfer. The term 'customer' includes any person who has a claim against the debtor arising out of sales or conversions of such securities, as any person who has deposited cash with the debtor for the purpose of purchasing securities* * *."

SIPA § 78lll(2).

All stockbroker liquidations under SIPA have at least two types of estates—a customer estate and a general estate. The customer estate is a fund of "Customer Property" which is funded with customer related assets, *see* SIPA § 78lll(4), and is distributed pro rata among all customers. *See* SIPA § 78fff–2(c)(1). The general estate is comprised of all non-customer related assets.

A SIPA trustee is charged with discharging a debtor's obligations to customers to the extent that they may be determined to the trustee's satisfaction from the debtors books and records. *See* SIPA § 78fff–2(b). SIPC advances funds to the trustee as are necessary to permit the trustee to satisfy customer claims, within the limits of the statutory protection. *See* SIPA § 78fff–3(a).[6] To the ex-

---

**5.** In fact, the key provisions of SIPA, which establish procedures for the liquidation of financially troubled broker-dealers were derived nearly word for word from section 60e of the Former Bankruptcy Act. *See* S.Rep. No. 1218, 91st Cong., 2d Sess. 11 (1970); *see also* H.R.Rep. No. 1613, 91st Cong., 2d Sess. 10 (1970); *SEC v. F.O. Baroff & Co.,* 497 F.2d 280 (2d Cir.1974); *SEC v.*

*Kenneth Bove & Co.,* 378 F.Supp. 697 (S.D.N.Y. 1974). SIPA has thus been characterized as an "engraftment of insurance provisions upon the pre-existing Section 60e bankruptcy provisions applicable to stockbrokers." *SEC v. Aberdeen Securities,* 480 F.2d at 1123.

**6.** Congress has authorized SIPC to supplement the fund of Customer Property with amounts of

tent of its advances, SIPC becomes subrogated to the claims of customers, such claims being asserted first against the debtor's fund of Customer Property and second (together with all customers not made whole by SIPC advances and distributions form the fund of Customer Property) pro rata against the general estate. *See* SIPA §§ 78fff–3(a), 78fff–2(c)(1), 78*lll*(11). *See also In re Adler Coleman*, 195 B.R. at 270.

*The Limited Scope of Customer Protection*

The courts take a restrictive view of Congress' intended scope of customer protection. See, e.g., *In re Brentwood Securities, Inc.*, 925 F.2d 325, 330 (9th Cir.1991)(SIPC "does not comprehensively protect investors from the risk that some deals will go bad or that some securities issuers will behave dishonorably"); *SIPC v. Morgan, Kennedy & Co., Inc.*, 533 F.2d 1314, 1317 n. 4 (2d Cir.) (SIPC not designed to accord full compensation to all injured by brokerage collapse), *cert. denied sub nom. Trustees of the Reading Body Works, Inc. v. SIPC*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976); *SEC v. Packer, Wilbur*, 498 F.2d at 983 (2d Cir. 1974)("SIPA was not designed to provide full protection to all victims of a brokerage collapse").

Indeed, the courts have repeatedly emphasized the narrowness of the definition of customer. *In re M.V. Securities, Inc.*, 48 B.R. 156, 159 (Bankr.S.D.N.Y.1985)("although the emphasis on the customer as investor and purchaser/trader has been a consistent theme in the Second Circuit, the court has nevertheless approved a narrow interpretation of the 'customer' definition of SIPA"), *citing, SIPC v. Morgan, Kennedy, supra* and *SEC v. F.O. Baroff Co., Inc.*, 497 F.2d 280 (2d Cir.1974). *See also In re Adler Coleman*, 195 B.R. at 269.

*The Claimant has the Burden Of Proof*

■ "Customer" status in a SIPA proceeding is a preferred status which gives customers priority in the distribution of certain assets marshaled by the trustee as well as entitlement to advances from the SIPC fund. *SIPC v. I.E.S. Management Group, Inc.*, 612 F.Supp. 1172, 1177 (D.N.J.1985), *aff'd* w/o opinion, 791 F.2d 921 (3rd Cir.1986)("customers" under SIPA receive preferential treatment by being satisfied ahead of general creditors); *In re Hanover Square Securities*, 55 B.R. 235, 237 (Bankr.S.D.N.Y.1985)([a]ffording customer status confers preferential treatment); *In re Government Securities Corp.*, 90 B.R. 539, 540 (Bankr.S.D.Fla.1988)("customers" under SIPA have "preferred status").

■ In an ordinary bankruptcy, claimants seeking a preferred status bear the burden of showing that they are within the class of eligible persons and that their transactions are protected under the Bankruptcy Code. *See In re O.P.M. Leasing Services, Inc.*, 60 B.R. 679, 680 (Bankr.S.D.N.Y.1986). The same rule applies in a SIPA case. Provisions of SIPA make clear a claimant's burden by requiring that a debtor's obligations to its customers be "ascertainable from the books and records of the debtor" or "otherwise established to the satisfaction of the trustee." *See* SIPA § 78fff–2(b). *See also In re Brentwood Securities*, 925 F.2d at 327; *In re Adler Coleman*, 204 B.R. at 115; *Schultz v. Omni Mutual, Inc.*, Fed. Sec. L. Rep. 98095 at p. 98763, 1993 WL 546671 (S.D.N.Y.1993).

In the instant case the Claimant is attempting to establish a protected "customer" claim under SIPA. Accordingly, the Claimant has the burden of establishing his entitlement to that status.

*Claims Based on Debtor's Failure to Execute Orders are not Protected Under SIPA*

The Claimant alleges that because the securities in his account on the Filing Date should have been sold prior to that date, he is entitled to recover, as part of his net equity[7], the cash proceeds which would have

---

up to $500,000 for each holder of a valid customer claim, with a maximum of $100,000 for that portion of the claim which is for cash. SIPA § 78fff–3(a).

7. The term "net equity" means the dollar amount of the account * * * of a customer, to be determined by— (A) calculating the sum which would

have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer* * *; minus (B) any indebtedness of such customer to the debtor on the filing date; plus (C) any payment by such customer to which is made with the approval of the trustee amd

been generated by such a sale and which he alleges should have been in his account. He states that he instructed the Debtor by letter to make the sale, but that the order was not executed. In essence, the Claimant is seeking SIPC coverage for what he claims should have existed in his account had his order to sell securities been effected rather than what actually existed on the date the SIPA liquidation was commenced.

For the purposes of his motion, the Trustee has assumed the truth of each of the Claimant's specific allegations that the Debtor failed to execute the sales as instructed. Nonetheless, the Trustee contends that the Claimant is not entitled to preferential treatment on account of any losses which occurred due to the failure to execute the sales and is limited to the amount of cash and securities of the same type and quality as those in his account as of the date the SIPA liquidation was commenced. This court agrees.

In determining the nature of the Claimant's status in relation to the Debtor, the court must look to matters as they existed as of the date the SIPA liquidation was commenced. *See* SIPA § 78fff–2(b). *See, e.g.* *SIPC v. Vigman*, 803 F.2d 1513, 1516 (9th Cir.1986); *SEC v. Aberdeen Securities Co., Inc.*, 480 F.2d at 1123–24; *Matter of Atkeison*, 446 F.Supp. 844 (M.D.Tenn.1977); *Matter of Bevill, Bresler & Schulman, Inc.*, 83 B.R. at 892.

It is well established that claims based on a *debtor's failure to execute securities trades* are not "customer" claims which a trustee may satisfy with SIPC funds or Customer Property. Rather, these claims are general unsecured breach of contract claims. *See In re Adler Coleman, supra* (where brokers failed to execute sales as instructed "those claimants are not entitled preferential treatment on account of those alleged losses. Claims arising from a brokers failure to execute a sell order are general unsecured breach of contract claims, not customer claims entitled to priority under SIPA."); *SEC v. JNT Investors, Inc.*, [1979 Transfer Binder] Fed. Sec. L. Rep. 96729, 1978 WL 1137 (S.D.N.Y.1978)(SIPA does not protect

or insure a customer from the loss which may result by the failure to execute a sell order); *SEC v. Howard Lawrence & Co., Inc.*, 1 BCD 577 (Bankr.S.D.N.Y.1975)(SIPA "does not apply to the case where the loss arises from a breach of contract. The failure to comply with a sell order does not result from the insolvency, but rather gives rise to a cause of action for breach of contract. This breach of contract action if successful would place the claimants in the position of general creditors"); *SEC v. Kelly, Andrews & Bradley, Inc.*, 385 F.Supp. 948, 952–53 (S.D.N.Y. 1974) ("[t]o require the Trustee to use SIPC funds to pay damages for a breach of contract claim against the debtor would not serve the congressional purpose of avoiding the domino effect inherent in unfulfilled open contractual commitments and would only serve to give a windfall to those who are general creditors based on breach of contract claims"); *In re M.V. Securities*, 48 B.R. at 156 (no SIPA protection for claims based on breach of contract); *see also, Matter of Oberweis Securities*, 135 B.R. at 846; *Barton v. SIPC*, 182 B.R. at 985; *In re First State Securities Corp.*, 34 B.R. 492, 496–97 (Bankr. S.D.Fla.1983).

In March of 1988, SIPC adopted "Rules Relating to Satisfaction of a 'Claim for Cash' or a 'Claim for Securities'," 17 C.F.R. Part 300.500 to Part 300.503. The SIPC rules apply where there is a question of whether a particular securities transaction gives rise to a claim for cash or for securities under SIPA. 17 C.F.R. Part 300 .500. These rules have been accorded legislative effect. *See* SIPA § 78ccc.

Rule 502(b) provides that notwithstanding a customer's order to sell securities, the customer still has a claim for those securities unless (1) the debtor has sent written confirmation of the sale or (2) the securities have become the subject of a completed executory contract for sale. In the instant case the Debtor never issued a written confirmation of sale. Nor was there a completed executory contract for the sale of securities. Because neither condition has been satisfied, the court finds that the Trustee has properly determined the Claimant's net equity based

within such period as the trustee may determine

\* \* \*. SIPA § 78*lll*(11).

on the position in his account on the Filing Date. The claim embodied in the Claimant's written objection is therefore not entitled to preferred SIPA customer claim status and is not compensable from the customer funds or SIPC advances. *See In re Adler Coleman,* 195 B.R. at 276; *Barton v. SIPC,* 182 B.R. at 985 (claim for damages from brokers' failure to execute sale as directed was a general unsecured claim to be satisfied from estate, not customer funds).

## *CONCLUSION*

For the reasons set forth above the Trustee's motion is GRANTED.