**In re NEW TIMES SECURITIES SERVICES, INC., and New Age Financial Services, Inc., Debtors.**

No. 800–8178–511.

United States Bankruptcy Court,
E.D. New York.

Nov. 18, 2004.

Christopher K. Kiplok, Hughes, Hubbard & Reed, LLP, New York City, for Trustee James W. Giddens.

May Orenstein, Heller, Horowitz & Feit, P.C., New York City, for Stafford and Weine.

## MEMORANDUM DECISION AND ORDER

MELANIE L. CYGANOWSKI, Bankruptcy Judge.

Before the Court is a Joint Motion (the "Motion") by James W. Giddens, as Trustee of the above-captioned Debtors, and the Securities Investor Protection Corporation, to uphold the Trustee's determinations to deny certain claims of Mary Ann Stafford (Claim No. 331) and Rheba and Joel Weine (Claim No. 443) treatment as customer net equity claims under 15 U.S.C. §§ 78fff–2 and 78fff–3(a). For the reasons that follow, the Trustee's determinations as to Claim Nos. 331 and 443 is upheld.

### Underlying Facts

For over 15 years, William Goren ("Goren"), through his companies, New Times Securities Services, Inc. ("New Times") and New Age Financial Services ("New Age"), defrauded hundreds of investors out of approximately $32.7 million through phony investments and fraudulent promissory notes. In some cases, Goren told investors that they were investing in "New Age Securities Money Market Funds" or similarly named funds that did not exist. In other cases, Goren told investors that they were investing in publicly traded funds that existed but he never invested their money in them. In other cases, Goren persuaded investors to loan him money to invest in commercial ventures. In return for the loans, Goren personally issued and signed promissory notes as to which he and New Age were obligated.

On May 18, 2000, the United States District Court for the Eastern District of New York entered an Order pursuant to the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa, et seq. ("SIPA"), finding that the customers of New Times were entitled to the protections afforded by SIPA. Pursuant to SIPA § 78eee(b)(3), James W. Giddens ("Trustee") was appointed to act as trustee in liquidating the business of New Times, and the liquidation proceeding was removed to the Bankruptcy Court pursuant to SIPA § 78eee(b)(4). To the extent consistent with the provisions of SIPA, such a liquidation proceeding is to be "conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of [the Bankruptcy Code.]" 15 U.S.C. § 78fff(b). On November 27, 2000, this Court granted the Trustee's application to substantively consolidate the estates of New Times and New Age. Pursuant to the Order, all assets and liabilities of New Times and New Age were combined, all intercompany liabilities and claims cancelled and the combined estate was to be administered by the Trustee in accordance with SIPA and the Bankruptcy Code.

On May 30, 2000, this Court entered an Administrative Order which established procedures governing the filing of claims by customers and the Trustee's review, analysis and determination of those claims. The Order directed the Trustee to publish notice of the liquidation proceeding and the bar date requiring that all customer claims be filed 60 days from the date of publication and mailing of the notice. It also ordered the Trustee to satisfy, within the limits of SIPA, the "net equity" claims of those customers who established their claims to the satisfaction of the Trustee pursuant to 15 U.S.C. § 78fff–2(b). Finally, the Order mandated that any customer who opposed the Trustee's determination must file a written statement setting forth the basis of the opposition, accompanied by

documents supporting that position, within 30 days of the date the Trustee mailed his determination to the claimant.

Of the eight hundred ninety eight (898) claims filed, two hundred eighty-two (282) of the claims involved promissory notes obligating Goren and New Age to pay. The Trustee rejected all claims involving the promissory note transactions on the ground that they were not "customer" claims covered by SIPA. Two hundred fifty-nine (259) of the denied claimants did not dispute the Trustee's determinations, but twenty-three (23) timely filed written statements of opposition. The Trustee and the Securities Investment Protection Corporation ("SIPC") moved to expunge the objections of eleven (11) of the claimants with similar factual claims related to promissory notes. On June 24, 2002, the Honorable Thomas C. Platt granted the Trustee's motion with respect to all eleven (11) claimants finding that the claims based on the promissory notes were not customer claims protected by SIPA. (*See* Memorandum Decision and Order by District Judge Platt, dated June 24, 2002).

Before the Court is a controversy surrounding the Trustee's determination that separate claims filed by Rheba and Joel Weine (together, the "Weines") and Maryann Stafford ("Stafford") (the Weines and Stafford shall be referred to collectively as the "Claimants") should not be treated as customer net equity claims and therefore should not be afforded priority treatment under 15 U.S.C. §§ 78fff–2 and 78fff–3(a). According to the Trustee, the claims were based upon promissory notes issued by Goren and New Age and not based upon the purchase of securities. Consequently, the Trustee argues that the Claimants do not qualify as "customers" entitled to pri-

ority treatment under SIPA. The Claimants dispute this determination, and the Trustee and SIPC have moved to uphold the Trustee's determination. The facts of each case are as follows.

### The Claims of Rheba and Joel Weine

In May of 1998, the Weines deposited $35,000 with the Debtor to purchase New Age securities. In March of 1999, the Weines authorized Goren to sell $20,000 worth of their shares in New Age and invest those funds in a promissory note, dated March 1, 1999, which obligated Goren and New Age to re-pay the Weines with eighteen percent interest. The Weines' account statement from New Age for March 1999 documents the sale of 20,000 shares of the stock and the transfer of the proceeds to a private promissory note. (*See* Joint Memorandum of Law in Support of the Motion ("Memo of Law"), Exhibit C).

The Weines' customer claim form submitted to the Trustee lists the $35,000 originally invested in New Age and the subsequent promissory notes [1] entered into between the Weines and Goren/New Age. On the customer claim form, the Weines stated: "On 5/29/98 I originally purchased 35,000 shares of New Age Securities Money Market Fund and believe that I am owed for such purchases; Goren persuaded me to withdraw $20,000 from this account on 3/8/99 to purchase a promissory note." (Memo of Law, Exhibit D).

The Trustee allowed the Weines claim to the extent of $13,000, which represented the amount remaining in the securities account after the transfer of $20,000 to promissory notes and a $2,000 withdrawal from the account. The Trustee denied the claim with respect to the $20,000 that the

---

1. The Weines executed three other promissory notes (separate and apart from the one purchased with their securities) dated 11/30/99, 3/29/99 and 10/1/99, which claims SIPC denied and the Weines do not dispute.

Weines authorized to be transferred to a promissory note because it did not represent securities or money for the purchase of securities, and therefore the Weines were not "customers" as that term is defined in SIPA.

The Weines argue that they became "statutory customers" in May 1998 when they gave Goren money to purchase securities. They argue that their claim for restitution of these funds is a claim for "customer property" and object to the Trustee's re-characterization of their status based upon the conversion of a portion of their investment into promissory notes. (*See* Limited Objection to Trustee's Determination of Claim, dated July 19, 2001).

### The Claims of Maryann Stafford

In August 1998, Stafford deposited $75,000 with the Debtor to purchase securities. On August 15, 1999, Stafford authorized the Debtor to sell $20,000 of her securities and transfer the money to a promissory note on which Goren and New Age were obligated. (Memo of Law, Exhibit F). As a result of the transfer and pursuant to the terms of the promissory note, Stafford received monthly interest payments of $1,050. Later that year, on November 15, 1999, Stafford again authorized the Debtor to withdraw $49,000 from her securities account and transfer the money to a promissory note. The terms of this note authorized a $1,000 payment to Stafford on the day the transaction took place and $735 in monthly interest payments thereafter. Stafford's account statement for August 1999 documents the transfer of funds to a private note.

Stafford's customer claim form submitted to the Trustee lists the two promissory notes totaling $69,000. On the customer claim form she states, "In 1998 (August) Goren convinced me to put all of my $75,000 into a New Age Securities Money Market Fund.... In 1999 Goren coerced me into turning the money market fund into promissory notes stating that my return on this investment would be higher. I am asking SIPIC [sic] and its representatives to review my claim so I can recoup my investment and because it was Goren himself who moved my money to a note to serve his own purposes." (Memo of Law, Exhibit E). The Trustee denied the full amount of Stafford's claim asserting it was not a customer claim protected by SIPA because the Debtor neither held securities for Stafford nor money for the purchase of securities. The Trustee asks this Court to uphold its determination.

Stafford objects to the Trustee's determination and argues that she did not forfeit her customer status and her "preexisting claim based on customer status based upon [Goren's] misappropriation of funds." (Objection to Trustee's Determination of Claim, dated July 19, 2001).

On May 30, 2003, the Trustee and SIPC filed a joint motion with memorandum of law to uphold the Trustee's determinations denying the Claimants' claims. The Trustee argues that (i) only "customers" as of the date of the filing of the liquidation proceeding are entitled to priority payment under SIPA; (ii) on the filing date the Claimants held promissory notes on which Goren and New Age were obligors; (iii) Claimants admitted that they authorized the "purchase" of the promissory notes and in fact received monthly interest payments pursuant to the terms of the notes; and (iv) the District Court held that holders of promissory notes are not "customers" protected by SIPA.

On August 4, 2003, the Claimants filed a further Memorandum of Law in opposition to the Trustee's motion, and framed the issue as "whether the Claimants' authorization of the transfer of funds (purportedly the proceeds of sales of securities held in their accounts) as loans to New Age and

Goren divested them of their pre-existing customer status with respect to their deposited funds. Stated alternatively, the issue here is whether the Debtor discharged its obligations to the Claimants by purporting to transfer cash from the Claimants' brokerage accounts for the purpose of funding their acquisition of promissory notes issued by the Debtor." (Claimants' Joint Memo of Law, dated July 30, 2004, at 6). The Claimants argue that because their money was never actually used to purchase securities, but rather was deposited into a non-designated bank account, commingled and converted to the Debtor's own uses, there could not have been any transfer of such funds from their securities accounts into promissory notes. (Claimants' Joint Memo, at 10). They argue that "to treat such transfers as real, requires the existence of actual rather than 'phantom' funds available for the transfers in custodial accounts held for the Claimants and the actual transfer of such funds from such accounts to non-custodial, proprietary account of the Debtor.... This did not occur. Nor could the delivery or completion of promissory note forms, or the payment of purported interest, operate to effectuate loans by Claimants to New Age." (Claimants' Joint Memo at 10). They argue that the only transfer of funds that occurred in these cases was the initial deposit of funds with the Debtor for the purchase of securities, and the Court should not recognize the transfer of funds to promissory notes because no transfer of funds actually took place. According to Claimants they are not attempting to rescind the promissory notes, but that the promissory notes never existed as they were fictitious transactions. (Claimants' Memo of Law, at 11). Finally, they argue that they should not be estopped from asserting a customer claim because the Debtor's conduct was fraudulent. Claimants do not dispute that customer status must be determined as of the filing date of the liquidation proceeding.

## DISCUSSION

The Court is called upon to decide a narrow issue as to whether the Claimants' hold "customer" claims which are entitled to priority payment under SIPA. The term "customer" is defined in 15 U.S.C. § 78*lll*(2) as:

> any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversion of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, but does not include—
>
> (A) any person to the extent that the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or
>
> (B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor."

▪ Only those qualifying as customers under SIPA are entitled to recovery

through SIPC. *See Investor Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1316 (2d Cir.1976); *SEC v. Goren*, No. 00–CV–970/800–8178–288 at 4 (E.D.N.Y. June 24, 2002). "A person whose claim against the debtor qualifies as a 'customer claim' receives preferential treatment in the distribution of assets from the debtor's estate." *In re Adler Coleman Clearing Corp.*, 204 B.R. 111, 114 (Bankr.S.D.N.Y. 1997). Investors not compensated by SIPC may have general unsecured claims against estate assets. *See In re MV Securities Inc.*, 48 B.R. 156, 161 (Bankr. S.D.N.Y.1985).

■ As in ordinary bankruptcy cases where claimants seeking preferred status bear the burden of proof, *see In re O.P.M. Leasing Services, Inc.*, 60 B.R. 679, 680 (Bankr.S.D.N.Y.1986), the onus here is on the claimants to prove that they qualify as "customers" under SIPA's definition and that their assets were entrusted to the debtor as a broker-dealer for trading in the securities market. *See Adler Coleman*, 204 B.R. at 115.

■ Courts have uniformly applied the definition of "customer" narrowly in order to carry out clear legislative intent to protect those who invest in securities. *See, e.g., S.E.C. v. F.O. Baroff Company, Inc.*, 497 F.2d 280, 284 (2d Cir.1974) (rejecting literal application of statutory language and finding claimant who voluntarily lent securities to broker is not afforded SIPA protection); *MV Securities*, 48 B.R. at 161 (finding that claim resulting from broker-dealer fraud not entitled to SIPA protection even though funds originally were deposited for the purchase of securities); *see also SIPC v. Executive Securities*, 556 F.2d 98, 99 (2d Cir.1977) (noting courts' rejection of literal application of "customer"). "The emphasis throughout [the legislative history] was on the customer as investor and trader, not on others who might become creditors of the broker-dealer for independent reasons." *F.O. Baroff Company*, 497 F.2d at 283. The intent behind SIPA was to restore investor confidence in the securities market. *See In re A.R. Baron Co., Inc.*, 226 B.R. 790, 793 (Bankr.S.D.N.Y.1998).

In *S.E.C. v. Goren*, a decision of the District Court for the Eastern District of New York arising out of the New Times liquidation proceeding, eleven claimants who gave Goren or New Age money to invest in real estate partnerships and general investment opportunities and received promissory notes in return, asserted that they qualified as customers under SIPA. *Goren*, 00–CV–970/800–8178–288, at 2–3. District Judge Platt concluded that the evidence presented by the claimants did not entitle them to protection as SIPA customers because they failed to prove that they gave the Debtor money to invest in capital markets. *Id.* at 6–7. He stated that the high-interest payments from the promissory notes made the claimants more analogous to lenders than investors. *Id.* Judge Platt also noted that the contention of the claimants that they thought they were investing in capital markets was dispelled by the fact that they never received any confirmation or other evidence of the purchase of securities. *Id.*

In *S.E.C. v. F.O. Baroff Company Inc.*, 497 F.2d 280, 281 (2d Cir.1974), the claimant, Mr. Lubin, voluntarily lent 7,000 shares of common stock to Baroff to help out the failing brokerage house. An account was opened by Baroff in Lubin's name and a stock receipt was issued. *Id.* A letter from Lubin's attorneys to the Trustee in that case indicated that the loan was not made for securities trading or investment purposes but rather to assist Baroff in getting out of a cash bind. *Id.* The Second Circuit concluded that Mr.

Lubin did not qualify as a "customer" under SIPA and that,

> [i]f Lubin had chosen to support Baroff through a direct loan of cash, rather than taking a circuitous route of lending securities with permission to hypothecate so as to enable the broker to obtain cash, he would obviously be outside of the Act's definition of 'customers' which covers cash deposits only if they are 'for the purpose of purchasing securities.'

*Id.* at 284; *see also In re Hanover Square Securities,* 55 B.R. 235, 238 (Bankr. S.D.N.Y.1985) (finding that claimants were lenders, not customers, where "securities were pledged as collateral in connection with subordinated loan agreements under which the Claimants received monthly payments of interest").

In *In re MV Securities, Inc.,* Ms. Bucchino, an investor, was "induced" to sell securities she held through the broker and buy bonds with the money. 48 B.R. 156, 157 (Bankr.S.D.N.Y.1985). A liquidation proceeding was commenced against the broker, and the Trustee denied Bucchino's claim as a "customer" claim on the basis that "her account did not contain either cash or securities as of the filing date ... because her bonds had already been delivered to her." *Id.* The court upheld the Trustee's determination and stated, "[t]here can be no doubt that Ms. Bucchino is an innocent member of the investing public who has been ultimately injured by the insolvency of a brokerage house ... However, Ms. Bucchino's claim is in essence one of fraud or overreaching. It is not denied that she authorized the sale of her existing securities and the purchase of the ... Bonds." *Id.* at 160. After noting that a case could be made to extend SIPC coverage to claims like Bucchino's, the court concluded that the intent of legislature and the courts was to interpret the definition of customer narrowly and ex-clude claims such as Bucchino's from coverage. *Id.* at 160–61.

■ Thus constrained to interpret the SIPA statute narrowly, this Court upholds the Trustee's determination that, with respect to the funds that were transferred to promissory notes, the Claimants are not "customers" as of the time of the filing of the liquidation proceeding. The fact that funds were originally deposited with the Debtors for the purchase of securities does not change the fact that as of the filing date, the Claimants held promissory notes with Goren and New Age, not securities. *See In re Stalvey & Associates,* 750 F.2d 464, 470 (5th Cir.1985) (rejecting claimants "once a customer, always a customer" argument). Although the original purchase of securities resulted from a broker-dealer relationship, each transaction must be looked at separately to determine if it deserves SIPA protection. *See Adler Coleman,* 204 B.R. at 115 ("SIPA focuses on the specific securities or transactions that are the subject of a claim"). When the Claimants authorized Goren to transfer assets in their securities accounts for the purpose of entering into promissory notes, the money transferred to the promissory notes became an obligation by Goren and New Age to repay those funds. As such, the Claimants no longer had money on deposit with the Debtors for the purchase of securities (except to the extent funds remained after the transfer to promissory notes). Affording protection to that part of the Claimants' claims consisting of money transferred to promissory notes does not comply with the intent of SIPA or this Circuit's narrow interpretation of "customer." The fact that Goren defrauded the Claimants does not change this result. *See also Stalvey & Associates,* 750 F.2d at 471 (finding that customer status in the course of some dealings with broker did not confer that status upon other dealings,

where broker defrauded customer, "no matter how intimately related, unless those other dealings also fall within the ambit of the statute"); *MV Securities,* 48 B.R. at 157.

The Claimants argue that the Court should somehow ignore the promissory notes because Goren and the Debtors executed "fictitious transactions." This contention, however, is belied by the facts that (a) the Claimants authorized the loans to Goren and New Age from their accounts; (b) they received account statements indicating that they loaned money to Goren and New Age and did not object; (c) they actually received promissory notes indicating Goren and New Age's promise to repay; (d) they received a generous interest rate on the notes; and (e) the Claimants' original customer claim forms indicated that they held promissory notes. Under these circumstances, the Court cannot disregard the promissory notes and construe them as something they are not.

### CONCLUSION

For all of the foregoing reasons, the motion by the Trustee and SIPC to uphold the Trustee's determinations denying the claims of Rheba and Joel Weine and MaryAnn Stafford is granted.

SO ORDERED.