## In the Matter of OBERWEIS SECURITIES, INC.

## SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiffs,

v.

## OBERWEIS SECURITIES, INC., Defendant.

Bankruptcy No. 89 B 11283.
Civ. A. No. 90 C 3466.
Adv. No. 90 A 0486.

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 31, 1991.

---

Marsha Gerber, Mayer, Brown & Platt, Chicago, Ill., for J. William Holland, Jr. as SIPA Trustee.

Theodore H. Focht, General Counsel, Washington, D.C., for Securities Investor Protection Corp.

Donald Shriver, pro se.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

### FACTS

This matter comes before the court on the trustee's motion for summary judgment. The question is whether the trustee's denial of the brokerage customers' claims for dividends that would have been earned had the funds been invested as in-

structed by the customers is proper under the Securities Investor Protection Act ("SIPA"). In SIPA terms, the bottom line question is whether a claim for dividends that would have been earned had the debtor brokerage executed its customers' instructions is properly characterized as part of a customer's net equity and is therefore recoverable under SIPA, or, is a claim for damages and is therefore not recoverable under SIPA.

The relevant facts are not in dispute. The Shrivers maintained a securities account with Dean Witter Reynolds, Inc., and their account representative was Clark Galloway. Galloway left Dean Witter in April 1988 to join Oberweis Securities, Inc. as an account representative. The Shrivers agreed to transfer all their Dean Witter accounts to Oberweis when Galloway moved to Oberweis, with the understanding that their accounts would continue to be administered in the same fashion as at Dean Witter. The Shrivers owned 28,767 shares of Dean Witter/Sears Liquid Assets, which were sold for $28,767.72 on April 11, 1988. Dean Witter properly transferred the sale proceeds to Oberweis on April 20, 1988 by a check through Midwest Clearing House. The Shrivers instructed Oberweis to invest the proceeds in a money market mutual fund.

For unknown reasons, the $28,767.72 never reached the Shrivers' new account at Oberweis. The money remained unaccounted for when in 1988, Oberweis encountered serious financial difficulties and shut down its brokerage business. At that time Oberweis began a process described as a "self liquidation" outside of a SIPA proceeding or bankruptcy case. As part of that process, Oberweis sold most of its customer accounts to other brokers. The Shrivers account was sold to the Illinois Company. At that time, it became clear that Oberweis had neither purchased money market mutual funds shares for the Shrivers nor credited their account with the $28,767.72 Dean Witter had sent to Oberweis.

On July 10, 1989, creditors filed an involuntary bankruptcy petition against Oberweis. That petition was approved and a Chapter 7 bankruptcy trustee was appointed. Thereafter, the Securities Investor Protection Corporation ("SIPC") determined that a Securities Investor Protection Act liquidation would be preferable to a bankruptcy liquidation. A SIPA proceeding was brought before Judge James Zagel in the United States District Court for the Northern District of Illinois who, at SIPC's request, appointed J. William Holland, Jr., Esq., as SIPA trustee to oversee the liquidation of Oberweis. Judge Zagel then referred the SIPA case back to the bankruptcy court to administer. *See generally*, 15 U.S.C. § 78eee(b)(4).

The Shrivers filed a timely customer claim for $28,767.72 for principal and another claim for $6,343.83 for dividends that the $28,767.72 would have earned had it been invested in a money market mutual fund per their instructions. The trustee allowed the Shrivers' claim for a cash credit balance of $28,767.72 but denied their claim for the unpaid dividends. The Shrivers objected to the trustee's denial of their claim for dividends and initiated this proceeding seeking a judicial determination of whether the dividends they would have earned on the money market mutual fund account had their investment instructions been followed by Oberweis are recoverable under the SIPA. Thereafter, the trustee filed a motion for summary judgment asserting that the claim was properly denied because it is a claim for damages, and as such is not recoverable under SIPA as a matter of law.

The question has been fully briefed by both sides. A review of the various documents the parties have filed with this court leads to the conclusion that there are no issues of material fact in dispute between the trustee and the claimants. Instead, the outcome of the adversary proceeding turns on the legal characterization of the dividends that would have been earned as either damages or part of the Shriver's net equity. After reviewing the facts and the arguments of the parties, this court finds that the Shrivers' claim is properly characterized as a claim for damages and therefore is not recoverable under

SIPA. Accordingly, the Trustee's motion for summary judgment is granted.

## JURISDICTION

The court has jurisdiction over this proceeding under 15 U.S.C. § 78eee(b)(4) which requires the district court issuing the protective order to refer the entire SIPA liquidation proceeding to the bankruptcy court once a SIPA trustee has been appointed.

## STANDARD FOR SUMMARY JUDGMENT

■ Under Rule 56(c) Fed.R.Civil P., Bankr.Rule 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The inquiry the court must make is whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. All reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *In re Mirus*, 87 B.R. 960 (Bankr. N.D.Ill.1988).

## DISCUSSION

Oberweis Securities is a stock brokerage firm that became insolvent. SIPA was enacted by Congress in 1970 to protect the assets of investors held by broker-dealers who become insolvent after a series of brokerage house failures in the late 1960's left many investors with the loss of most or all of their life savings. *See, SIPC v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *In re Brentwood Securities, Inc.*, 925 F.2d 325 (9th Cir.1991). SIPA created SIPC, a non-profit corporation the members of which include most registered broker-dealers, and SIPC maintains an insurance fund for investor protection. The funds assets come from mandatory contributions required of member broker-dealers. *See,* 15 U.S.C. § 78ddd.

■ SIPA identifies which investors are protected by the fund and which claims of those customers can be paid from that fund. SIPA does not protect all assets of all investors. Instead, the SIPA offers protection only for "customers" of registered broker-dealers, a term SIPA defines as:

> any person ... who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with collateral security, or for purposes of effecting a transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities ...

15 U.S.C. § 78*lll* (2).

Thus, an investor will be protected by the SIPC only if the investor, in the ordinary course of the broker dealer's business, has entrusted cash or securities to a broker-dealer that becomes insolvent. *Brentwood* at 327.

■ SIPA makes it clear that SIPC does not protect customers against all losses. Only the amount that the broker would have owed each customer had it liquidated all the customer's holdings on the date the SIPC filed the SIPA proceeding is protected by the SIPC fund. *Securities Investor Protection Corporation v. Vigman*, 803 F.2d 1513 (9th Cir.1986). When a member brokerage firm becomes insolvent and that broker's assets are insufficient to satisfy the obligations to clients, SIPC will advance the funds to pay allowable SIPA claims, up to $500,000 per customer, of which no more than $100,000 may represent reimbursement of cash. *See,* 15 U.S.C. § 78*lll*–(11). Under the SIPA claims process, the customer's account is valued

as of the day when SIPA proceedings are brought against the broker. *See,* 15 U.S.C. § 78fff–3(b). The value of the account, which is the measure of the customer's SIPA claim, is its "net equity," computed by taking the dollar amount of funds in the account, excluding specifically identifiable property that will be returned to the customer, deducting any indebtedness and other obligations owed by the customer to the broker, and by giving effect to certain open contractual commitments. 15 U.S.C. §§ 78fff–3(a), 78*lll*(11). *See, Securities and Exchange Commission v. Aberdeen Securities Co., Inc.,* 480 F.2d 1121 (3rd Cir.1973). Thus, only a customer's net equity is protected by the SIPC insurance fund. *See, Securities Investor Protection Corporation v. Vigman,* 803 F.2d 1513 (9th Cir.1986).

In SIPA proceedings, the threshold issue is whether a claimant meets the definition of a customer. *See,* 15 U.S.C. § 78*lll*(2). Clearly, the Shrivers are customers because they entrusted their $28,767 to Oberweis in the ordinary course of Oberweis's business. *See, Securities and Exchange Commission v. Kenneth Bove & Co., Inc.,* 378 F.Supp. 697 (S.D.N.Y.1974); *In re Brentwood Securities, Inc.,* 925 F.2d 325 (9th Cir.1991). Obviously the Shrivers' claim to the $28,767.72 they entrusted to Oberweis but which Oberweis failed to credit to their account is part of their net equity as that term is used by SIPA. *See,* 15 U.S.C. § 78*lll*(11). The more difficult question is whether the Shrivers' claim for dividends they would have earned if the debtor bought the money market mutual fund securities is incorporated into the definition of net equity.

Several courts have held that SIPA does not protect customer claims based on fraud, negligence, or breach of contract, because SIPA was designed to protect investors in situations where their loss is occasioned directly by the insolvency of the broker-dealer. In *In re Bell & Beckwith,* 124 B.R. 35 (Bkrtcy.N.D.Ohio 1990), the customers bought stock on the basis of inside information. This information proved to be false, and the customers lost money when forced to sell the stock at a loss after the broker became insolvent and

became the subject of a SIPA proceeding. The SIPA trustee returned the money in the customer's account to the customer. The customer however, asserted that he was entitled to money damages resulting from the fraudulent conduct of his broker. The court found that this claim was not protected by the SIPA because it was predicated on fraud, and was not the result of the broker's insolvency. In *Securities and Exchange Commission v. S.J. Salmon & Co., Inc.,* 375 F.Supp. 867 (S.D.N.Y.1974), the court found that an investor's claim for rescission on account of fraudulent inducement was not a protected customer claim, and that the customer would have to pursue his claim as a general creditor. In *Securities and Exchange Commission v. Howard Lawrence & Co., Inc.,* 1 B.C.D. 577, 579 (Bkrtcy.S.D.N.Y.1975), the court stated "[t]he SIPA does not protect customer claims based on fraud or breach of contract." *See also, In re Government Securities Corp.,* 90 B.R. 539 (Bkrtcy.S.D.Fla.1988); *In re M.V. Securities, Inc.,* 48 B.R. 156 (Bkrtcy.S.D.N.Y.1985).

The court finds the reasoning in these cases is sound, and claims based on fraud or breach of contract are not considered part of a customer's protected net equity claim. The essence of the Shrivers' claim is that they suffered damages as a result of the debtor's failure to invest their money as instructed. The failure to execute an order to buy securities gives rise to a breach of contract claim for damages, but is not a customer claim protected by the SIPA. *See, Securities and Exchange Commission v. White & Co.,* 72 C. 185(2), (E.D.Mo.1974). This damage would have occurred even if the debtor had not become insolvent. Thus, this claim is not within the purview of what SIPA seeks to protect, since this loss is not a direct result of the debtor's insolvency. *See, e.g., In re Government Securities Corp.,* 90 B.R. 539 (Bkrtcy.S.D.Fla.1988). The Shrivers have received $28,767 from the trustee. This is all they should receive from SIPC funds because only the loss of this $28,767 was caused directly by the debtor's insolvency. This is not to say that the Shrivers claim for dividends is an invalid claim. It is a valid claim, but must be satisfied from the

general estate, not from SIPC funds. *See, In re Bell & Beckwith*, 124 B.R. 35 (Bkrtcy.N.D.Ohio 1990).

## CONCLUSION

For the foregoing reasons[1], the Trustee's motion for summary judgment on the issue of the denial of the claimant's claim for dividends that would have been earned is granted. The Clerk will enter a judgment order in favor of the trustee.

---

1. The Shrivers also argue, based on the legislative history, Congress intended SIPA to satisfy customers legitimate expectations. *See* S.Rep. No. 763, 95th Cong.2d Sess. 2 (1978), reprinted in [1978] U.S.Code Cong. & Admin.News 764, 765. Therefore, the Shrivers assert that since they expected to receive dividends, their claim for dividends should be allowed. However, the Shrivers never received confirmation that the securities were in fact purchased. The court agrees with the trustee's argument that Congress did not intend to treat customers without confirmations the same as those with confirmations; that customers with confirmations have a legitimate expectation of receiving securities, but customers without confirmations do not have the same expectation. *See, e.g., In re Investors Center*, 129 B.R. 339 (Bkrtcy.E.D.N.Y.1991); *SEC v. Kenneth Bove & Co., Inc.*, 378 F.Supp. 697 (S.D.N.Y.1974). Thus, the Shrivers claim for dividends they would have received had their investment instructions been followed must be denied as a matter of law for lack of a confirmation.