**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**William GOREN, New Age Financial Services, Inc., New Times Securities Services, Inc., Defendants.**

**Securities Investor Protection Corporation, Plaintiff,**

v.

**New Times Securities Services, Inc. Defendants.**

**Nos. 00–CV–970 TCPEBT, 800–8178–288TCPEBT.**

United States District Court, E.D. New York.

May 28, 2002.

Kay L. Lackey, Gerald A. Gross, Edwin Henry Nordlinger, Securities and Exchange Com'n., New York, NY, for Securities and Exchange Com'n.

Andrew Kress, Kaye, Scholer, Fierman, Hayes & Handler, LLP, for Richard L. Stone.

Karen A. Caplan, Hughes Hubbard & Reed LLP, New York, NY, Stephen P. Harbeck, Washington, DC, for Securities Investor Protection Corp.

Andrew Donner, Honigman & Donner, LLP, Melville, NY, for Joseph Falcone.

David H. Wander, Wander & Assoc., New York, NY, for D. Reis Contracting Corp.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Before the Court are objections from thirteen claimants ("Claimants") in the Securities Investor Protection Corporation's ("SIPC") liquidation ("SIPC Liquidation") of the consolidated estates of New Times Securities, Incorporated ("New Times") and New Age Financial Services, Incorporated ("New Age"). For the reasons stated below, those Claimants' objections are SUSTAINED.

## BACKGROUND

The full factual background of this case was stated by the Court in its Memorandum and Order of March 6, 2002 wherein the Court withdrew the reference of the SIPC Liquidation from the United States Bankruptcy Court for the Eastern District of New York. *See SEC v. Goren,* No. 00–CV–970/800–8178–288, slip op. at 2–4 (E.D.N.Y. March 6, 2002). The Court presumes familiarity with that Memorandum and Order and only restates those facts necessary to decide these objections.

### A. The Claimants

The Claimants [1] are persons and entities that purchased shares in a non-existent money market fund called the New Age Securities Money Market Fund ("MMF"). All the Claimants, save one, filed claims in the SIPC Liquidation in excess of $100,000.00 for MMF losses they sustained when New Age and New Times ceased doing business. Each Claimant's claim amount is listed in the chart below.

---

1. The Claimants are: (1) Myrna K. Jacobs ("Jacobs"); (2) Simon and Helga Novek ("Noveks"); (3) Miriam Seidenberg ("Seidenberg"); (4) Felice Linder ("Linder"); (5) Angelo Scarlata ("Scarlata"); (6) the Rose Marie Ceparano Irrevocable Trust ("Ceparano Trust"); (7) the Estate of Allen A. Blynd ("Blynd Estate"); (8) Salvatore and Stella DiGiorgio ("DiGiorgios"); (9) Project Earth Environmental Fundraisers, Incorporated ("Project Earth"); (10) New York Optical, Incorporated ("New York Optical"); (11) the Carl Carter Irrevocable Trust ("Carter Trust"); (12) Craig Roffman ("Roffman"); and (13) Ellen Eschen ("Eschen").

## TOTAL CLAIMANT CLAIMS

| NAME | CLAIM NO. | CASH DEPOSIT | DIVIDEND REINVESTMENT | TOTAL CLAIM |
|---|---|---|---|---|
| Jacobs | 342 | $207,958.05 | $12,858.76 | $220,816.81 |
| Noveks | 369 | $300,000.00 | $21,010.08 | $321,010.08 |
| Seidenberg | 341 | $603,331.00 | $76,725.44 | $680,056.44 * |
| Linder | 603 | $255,867.44 | $19,152.40 | $275,019.84 [2] |
| Scarlata | 533 | $500,182.97 | $24,199.03 | $524,382.00 * |
| Ceparano Trust | 622–24 | $257,975.35 | $16,251.23 | $274,226.58 [3] |
| Blynd Estate | 687 | $163,602.57 | $ 0.00 | $163,602.57 |
| Project Earth | 583 | $149,915.02 | $ 0.00 · | $149,915.02 [4] |
| New York Optical | 745 | $343,340.01 | $ 0.00 [5] | $343,340.01 |
| Carter Trust | 458 | $ 40,963.00 [6] | $ 0.00 | $ 40,963.00 |
| Roffman | 577 | $317,103.00 [7] | $ 0.00 | $317,103.00 |
| Eschen | 176 | $125,000.00 | $ 0.00 | $125,000.00 |
| DiGiorgios | 405 | $275,760.20 | $ 0.00 | $175,760.20 |

2. In her objection, Linder interposes a total claim of $274,969.85, which is comprised of $255,867.44 of MMF shares purchased and $19,152.40 of dividend reinvestments. (Linder Ltd. Obj. to Trustee's Determination at 2.) The Court's addition of the sums Linder seeks results in a total claim of $275,019.84, and that is the amount the Court presumes Linder claims.

3. In their objection, the Ceparano Trust trustees claim inconsistent loss amounts. First, they claim they are owed $274,266.58. (Ceparano Trust Ltd. Obj. to Trustee's Determination at 1.) Those trustees later claim they are entitled to $274,969.85. (Ceparano Trust Ltd. Obj. to Trustee's Determination at 10.) The Ceparano Trust trustees' papers reveal that they claim the amount of cash they deposited to purchase MMF shrares ($257,-975.35) plus their dividend reinvestments ($16,251.23) which the Court concludes is $274,226.58. Accordingly, the Court treats the Ceparano Trust trustees' claim as one for $274,226.58.

4. Project Earth's claim is based on the number of fictitious MMF shares it held in its account on the filing date. (Project Earth Ltd. Obj. to Trustee's Denial of Claim at 4.) The Court will not treat any portion of Project Earth's claim as dividend reinvestments.

5. New York Optical was unable to determine from its own records the full amount of its claim and therefore relies on the SIPC Trustee's determination that its claim was for $343,340.01. (New York Optical Ltd. Obj. to Trustee's Determination at 3–4.) The SIPC Trustee determined the amount of New York Optical's claim based on New Age's and New Time's records and other documentation. The Court will not treat any portion of New York Optical's claim as dividend reinvestments.

6. The Carter Trust claims to have held 40,963 MMF shares in its account on the filing date. (Carter Trust Obj. to Trustee's Denial of Claim at 1.) The Carter Trust joins in the other Claimants' objections. (Carter Trust Obj. to Trustee's Denial of Claim at 1.) Those objections claim that each MMF share was worth $1.00. Accordingly, the Court characterizes the Carter Trust's claim as one for $40,963.00 of securities.

7. Roffman's claim is thoroughly convoluted. However, it appears he seeks $317,103.00 for cash deposited in his individual account for the purchase of MMF shares. The Court accordingly treats his claim ˙as one for that amount and makes no allowance for dividend reinvestments.

| NAME | CLAIM No. | CASH DEPOSIT | DIVIDEND REINVESTMENT | TOTAL CLAIM |
|------|-----------|--------------|----------------------|-------------|

\* Claims in excess of $500,000.00 are statutorily limited by the Securities Investor Protection Act to $500,000.00.

---

All the Claimants received written confirmation of their MMF share purchases.[8] All the Claimants also received monthly statements that reflected those share purchases.

## B. The SIPC Trustee's Claim Determinations

In 2001, the SIPC Trustee began individually notifying the Claimants: (1) that they held customer claims for cash; (2) that those claims would only be satisfied by SIPC up to $100,000.00; (3) that any claim amounts in excess of $100,000.00 would be treated as general unsecured claims; and (4) that dividend reinvestments shown on the Claimants' MMF account statements would not be allowed as customer claims. The SIPC Trustee also warned the Claimants that the consolidated New Age and New Times estate would likely lack funds to satisfy any general unsecured claims.

## C. Claimants' Objections and The Bankruptcy Court's Determinations

Dissatisfied with the SIPC Trustee's classification of their claims, the Claimants filed objections to the SIPC Trustee's claim determinations with United States Bankruptcy Judge Stan Bernstein. Specifically, the Claimants objected to: (1) the SIPC Trustee's classification of their claims as cash claims subject to the $100,000.00 coverage limitation imposed by the Securities Investor Protection Act of 1970 ("SIPA"); and (2) the SIPC Trustee's refusal to compensate them for dividend reinvestments.

SIPC and the SIPC Trustee subsequently moved jointly for an order: (1) upholding the SIPC Trustee's determination that the Claimants held cash claims; and (2) expunging objections to that determination. SIPC and the SIPC Trustee posited that the Claimants could not hold securities claims because they purchased shares in the non-existent MMF, that shares in a non-existent fund may not be securities for SIPA's purposes and that treating Claimants' claims as securities claims would create valuation and compensation problems.

On December 17, 2001, Bankruptcy Judge Bernstein issued a preliminary opinion ("Preliminary Opinion") that denied SIPC's and the SIPC Trustee's Joint Motion for an Order Upholding the Trustee's Determinations with Respect to Claims Filed for Investments in Non–Existent Money Market Funds and Expunging Objections to Those Determinations. Bankruptcy Judge Bernstein concluded that the SIPC Trustee's MMF claim determinations were based on "a tortured rationale" that was "forced and disingenuous." (R. of 12/17/01 at 6, 8.) Bankruptcy Judge Bernstein also reserved the right to "sup-

8. Roffman, Eschen and the Carter Trust do not explicitly state that they received trade confirmations or monthly statements reflecting MMF share transactions. However, they do adopt the arguments posited by the other Claimants. The other Claimants rely upon the receipt of those trade confirmations and monthly statements in their arguments to establish that they have securities claims. Accordingly, absent proof to the contrary, the Court assumes that Roffman, Eschen and the Carter Trust also received such trade confirmations and monthly statements.

plement and revise" his Preliminary Opinion. (R. of 12/17/01 at 14.)

Bankruptcy Judge Bernstein subsequently ordered a transcript of the hearing at which he issued that Preliminary Opinion and found that it contained transcription errors and erroneous legal references. *See In re New Times Sec. Servs., Inc. and New Age Fin. Servs., Inc.,* No. 800–8178–228, slip op. at 1 (Bankr.E.D.N.Y. Jan. 30, 2002). Concerned about the effects those errors would have and about the general reaction the Preliminary Opinion received, Bankruptcy Judge Bernstein withdrew the Preliminary Opinion on January 30, 2002. *See id.* at 2. Bankruptcy Judge Bernstein also recused himself from the case. *See id.* at 5.

Following several requests to reassign the SIPC Liquidation to a bankruptcy judge in Brooklyn and Bankruptcy Judge Bernstein's denial of a motion to reconsider his recusal, this Court intervened. On March 6, 2002, this Court issued a Memorandum and Order withdrawing the reference of the SIPC Liquidation and taking exclusive jurisdiction over the same. *See SEC v. Goren,* No. 00–CV–970/800–8178–288, slip op. at 9 (E.D.N.Y. March 6, 2002). The Court also directed the parties to the SIPC Liquidation to schedule a conference to discuss the status of that proceeding. *See id.*

At that conference, the Court notified the parties that it intended to resolve the Claimants' objections. It also indicated that it would consider, at a later date, the objections of certain promissory note holders. The Court now addresses the Claimants' objections to the SIPC Trustee's determination that they hold claims for cash and not securities. The Court sustains the Claimants' objections.

## DISCUSSION

### A. SIPA and SIPC

Congress enacted SIPA in response to a rash of broker-dealer failures and bankruptcies that tied up or dissipated customer assets. *Sec. Investor Prot. Corp. v. Barbour,* 421 U.S. 412, 415, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *see SEC v. Packer, Wilbur & Co.,* 498 F.2d 978, 980 (2d Cir. 1974); *SEC v. F.O. Baroff Co.,* 497 F.2d 280, 283 (2d Cir.1974). Congress designed SIPA to: (1) "arrest ... [that] process;" (2) "restore investor confidence in ... [United States] capital markets;" and (3) strengthen the financial responsibility rules that govern registered broker-dealers. *Barbour,* 421 U.S. at 415, 95 S.Ct. 1733; *see Packer, Wilbur & Co.,* 498 F.2d at 980; *F.O. Baroff Co.,* 497 F.2d at 283. Congress ultimately created SIPA to protect small investors from failing broker-dealers that oftentimes misappropriate customer funds in their final operational days. *See Packer, Wilbur & Co.,* 498 F.2d at 984; *Schultz v. Omni Mut.,* No. 93 Civ. 3700, 1993 WL 546671, **3–4, 1993 U.S. Dist. LEXIS 18464, at *9–11 (S.D.N.Y. Dec. 30, 1993); *SEC v. S.J. Salmon & Co.,* 375 F.Supp. 867, 871 (S.D.N.Y.1974).

SIPC is a private, non-profit corporation created by SIPA. *Sec. Investor Prot. Corp. v. BDO Seidman, L.L.P.,* 222 F.3d 63, 67 (2d Cir.2000); *Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co.,* 533 F.2d 1314, 1316 (2d Cir.1976); *see* 15 U.S.C. § 78ccc(a) (1994); *Barbour,* 421 U.S. at 413, 95 S.Ct. 1733. SIPC administers a fund, supported by assessments levied against registered broker-dealers,[9] that is

---

**9.** Broker-dealers registered with the United States Securities and Exchange Commission under section 15(b) of the Securities Exchange Act of 1934 automatically become SIPC members. 15 U.S.C. § 78ccc(a)(2)(A).

used to compensate the customers [10] of broker-dealers placed in liquidation proceedings. *BDO Seidman, L.L.P.*, 222 F.3d at 67; *Schober v. Dept. of Labor*, No. 97 CIV. 8623, 1998 WL 682276, *1, 1998 U.S. Dist. LEXIS 15321, at *1 (S.D.N.Y. Sept. 30, 1998); *see* 15 U.S.C. § 78ddd(c).

Member broker-dealers are placed in liquidation proceedings when SIPC: (1) determines that the broker-dealer has failed, or is in danger of failing, to meet its customer obligations; and (2) obtains a protective decree from a United States District Court.[11] 15 U.S.C. § 78eee(a)(3), (b)(1), (3); *BDO Seidman, L.L.P.*, 222 F.3d at 67. Liquidation proceedings are designed to: (1) deliver to customers customer name securities [12] and customer property [13]; (2) liquidate, sell and/or transfer "productive units" of the failed broker-dealer; and (3) enforce SIPC's subrogation rights. 15 U.S.C. § 78fff(a); *see BDO Seidman, L.L.P.*, 222 F.3d at 67; *In re Investors Ctr., Inc.*, 129 B.R. 339, 341 (Bankr.E.D.N.Y.1991).

Customers of failed broker-dealers placed in liquidation proceedings must file written claim statements in order to receive compensation for amounts lost due to broker-dealer failure, but need not file formal proofs of claim. 15 U.S.C. § 78fff-2(a)(2). SIPA directs SIPC trustees to discharge those claims promptly by delivering cash or securities to customers, provided those claims are: (1) "ascertainable" from the failed broker-dealer's records; or (2) established to the SIPC trustee's satisfaction. *Id.* §§ 78fff-2(b), 78fff-4(c); *see Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc. (In re Stratton Oakmont, Inc.)* 257 B.R. 644, 651–52 (Bkrtcy.S.D.N.Y. 2001); *In re A.R. Baron Co.*, 226 B.R. 790, 794 (Bankr.S.D.N.Y.1998).

SIPC trustees must deliver customer name securities to those customers or their representatives where possible. 15 U.S.C. § 78fff-2(c)(2). SIPC trustees must also satisfy customer net equity secu-

---

**10.** Customers are generally:

> any person[s] ... holding claims on account of securities received, acquired, or held by the ... [failed broker-dealer] in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person[s] for safekeeping, with a view to sale, to cover consummated sale, pursuant to purchases, as collateral security, or for purposes of effecting transfer.
> 15 U.S.C. § 78*lll* (2); *see Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc. (In re Stratton Oakmont, Inc.)* 257 B.R. 644, 651 (Bkrtcy. S.D.N.Y.2001).

**11.** District courts grant SIPC trustees' protective decree applications after determining: (1) that the broker-dealer is insolvent within the meaning of 11 U.S.C. § 101(32) or is unable to meet its obligations as they mature; (2) the broker-dealer is subject to another court or administrative proceeding in which a "receiver, trustee, or liquidator" has been appointed for that broker-dealer; (3) the broker-dealer has failed to comply with financial responsibility or hypothecation rules; or (4) the

broker-dealer is unable to demonstrate compliance with those financial responsibility or hypothecation rules. 15 U.S.C. § 78eee(b)(1)(A)-(D).

**12.** Customer name securities are:

> securities which were held for the account of a customer on the filing date by or on behalf of the debtor and which on the filing date were registered in the name of the customer, or were in the process of being so registered pursuant to instructions from the debtor, but does not include securities registered in the name of the customer which, by endorsement or otherwise, were in negotiable form.
> 15 U.S.C. § 78*lll* (2).

**13.** Customer property is generally cash and securities, other than delivered name securities, "at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted." 15 U.S.C. § 78*lll* (4).

rities claims, where possible, with securities purchased in orderly markets. 15 U.S.C. § 78fff–2(d); *In re Stratton Oakmont, Inc.*, 257 B.R. at 652.

To satisfy customer net equity claims expeditiously, SIPC must additionally advance to SIPC trustees up to $500,000.00 per failed broker-dealer customer. 15 U.S.C. § 78fff–3(a); *see BDO Seidman, L.L.P.*, 222 F.3d at 67. While SIPC trustees must use those funds to satisfy customers' securities claims up to $500,000.00, SIPC trustees may not satisfy customers' cash claims beyond $100,000.00. 15 U.S.C. § 78fff–3(a)–(a)(1); *see BDO Seidman, L.L.P.*, 222 F.3d at 67, 67 n. 2; *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 422 (Bkrtcy.S.D.N.Y. 2001).

SIPA defines securities as "any note, stock, ... bond, debenture, evidence of indebtedness, ... transferable share, ... certificate of deposit, certificate of deposit for a security, ... any investment contract, ... or group or index of securities (including interest therein or based on the value thereof)." 15 U.S.C. § 78*lll* (14). SIPC considers shares in money market funds organized as mutual funds to be securities, provided those shares are held in customers' securities accounts. *How SIPC Protects You*, QUESTIONS AND ANSWERS ABOUT SIPC (Securities Investor Protection Corporation, Washington, D.C.) Jan. 2000, at 6–7.

SIPC's Series 500 Rules determine whether customer claims are for cash or securities. *In re Adler, Coleman Clearing Corp.*, 263 B.R. at 425 n. 15; 17 C.F.R. § 300.500 (2001). The SEC promulgated the Series 500 Rules to promote uniform satisfaction of customer claims "based upon the customer's legitimate expectation of what the customer had in his ... account at the time of the demise of the SIPC member firm." Rules of the Sec.

Invest. Prot. Corp., 53 Fed.Reg. 10368 (March 31, 1988) (codified at 17 C.F.R. pt. 300); Rules of the Sec. Invest. Prot. Corp., 53 Fed.Reg. 1793 (proposed Jan. 22, 1988) (codified at 17 C.F.R. pt. 300).

The Series 500 Rules provide that where failed broker-dealers hold cash in accounts for customers, those customers have cash claims unless "the ... [broker-dealer] has sent written confirmation to the customer that the securities in question have been purchased for or sold to the customer's account." 17 C.F.R. § 300.501(b)(1). The Series 500 Rules further dictate that where broker-dealers hold cash in accounts for customers, customers have securities claims for authorized securities purchases if "the ... [broker-dealer] has sent written confirmation to the customer that the securities in question have been purchased for or sold to the customer's account." *Id.* § 300.502(a)(1). Accordingly, receipt of written confirmation of the purchase or sale of a security generally determines of what type of claim customers hold, because written conformation affects those customers' legitimate expectations. *See id.* §§ 300.501(b)(1), 300.502(a)(1); *In re Investors Ctr., Inc.*, 129 B.R. at 341, 350; *Sec. Investor Prot. Corp. v. Oberweis Sec., Inc., (In re Oberweis Sec., Inc.)* 135 B.R. 842, 847 (Bkrtcy. N.D.Ill.1991); *see also* Rules of the Sec. Invest. Prot. Corp., 53 Fed.Reg. 10368; Rules of the Sec. Invest. Prot. Corp., 53 Fed.Reg. 1793.

**B. The Claimants Hold Securities Claims and Are Entitled to $500,000.00 of SIPC Coverage**

■ The Claimants hold securities claims. They are accordingly entitled to $500,000.00 of SIPC protection. They are also entitled to have their dividend reinvestment claims satisfied.

There is no dispute that the Claimants are customers for SIPA's purposes. Moreover, neither party disputes that the MMF shares held in the Claimants' accounts would be securities for SIPA's purposes if the MMF in fact existed. *See How SIPC Protects You*, QUESTIONS AND ANSWERS ABOUT SIPC (Securities Investor Protection Corporation, Washington, D.C.) Jan. 2000, at 6–7; 15 U.S.C. § 78*lll* (14).

The SIPC Trustee nevertheless argues that the Claimants do not hold securities claims because William Goren, New Age and New Times embezzled Claimants' assets instead of investing them in an existing money market fund. However, SIPA's cash/securities distinction does not hinge on the unilateral actions of the fraudfeasor who embezzled his clients' funds, but instead turns on the transaction notice provided to customers and their legitimate expectations. Accordingly, the only real question is whether the Claimants received MMF share purchase confirmations and monthly account statements, and whether receipt of those confirmations and account statements gave the Claimants legitimate expectations that they held securities in their accounts. *See In re Investors Ctr., Inc.*, 129 B.R. at 341, 350; *In re Oberweis Sec., Inc.* 135 B.R. at 847.

The Claimants all received securities purchase confirmations and monthly statements from New Age and New Times that reflected MMF share purchases. Receipt of those confirmations and monthly statements bred legitimate expectations within the Claimants that they owned shares of an existing security.

Receipt of those MMF share purchase confirmations and monthly statements is sufficient to establish that the Claimants hold securities claims. *See* 17 C.F.R. §§ 300.502(a)(1), 300.501(b)(1); *see also In re Investors Ctr., Inc.*, 129 B.R. at 341,

350; *In re Oberweis Sec., Inc.* 135 B.R. at 847. Claimants are therefore entitled to $500,000.00 of SIPC protection and their objections to the SIPC Trustee's claims determinations must be sustained. *See* 15 U.S.C. § 78fff–3(a)–(a)(1); *BDO Seidman, L.L.P.*, 222 F.3d at 67, 67 n. 2; *In re Adler, Coleman Clearing Corp.*, 263 B.R. at 422.

■ Moreover, SIPC must also satisfy Claimants' dividend reinvestment claims. The Claimants' monthly account statements spawned the Claimants' legitimate expectations that dividends realized on their MMF holdings were reinvested back into the MMF to purchase additional shares. Receipt of those monthly account statements is accordingly sufficient to establish that Claimants hold securities claims for the amount of the dividend reinvestments because those Claimants had the legitimate expectation that they held not only the number of MMF shares they directly purchased, but also the shares their dividends bought them. *See In re Investors Ctr., Inc.*, 129 B.R. at 341, 350; *In re Oberweis Sec., Inc.* 135 B.R. at 847. Claimants are therefore entitled to have SIPC satisfy their dividend reinvestment claims as well.

Treating the Claimants' full claims as securities claims serves two important purposes. First, treating the Claimants' claims as securities claims satisfies the Claimants' legitimate expectations, which has been a primary SIPC goal since 1988. *See* 17 C.F.R. §§ 300.501(b)(1), 300.502(a)(1); *In re Investors Ctr., Inc.*, 129 B.R. at 341, 350; *In re Oberweis Sec., Inc.*, 135 B.R. at 847; *see also* Rules of the Sec. Invest. Prot. Corp., 53 Fed.Reg. 10368; Rules of the Sec. Invest. Prot. Corp., 53 Fed.Reg. 1793. Secondly, treating the Claimants' claims as securities claims promotes investor confidence in United States capital markets, which is a

**352**

fundamental SIPA purpose. *See Barbour*, 421 U.S. at 415, 95 S.Ct. 1733; *Packer, Wilbur & Co.*, 498 F.2d at 980; *F.O. Baroff Co.*, 497 F.2d at 283. Therefore, treating Claimants' claims as securities claims furthers both SIPA's and SIPC's aims.

Accordingly, the Claimants' objections to the SIPC Trustee's MMF claim determinations are sustained. The SIPC Trustee is directed to treat the full amount of the Claimants' claims, as listed in the chart above, as securities claims and to satisfy those claims up to $500,000.00.

## C. Manner of Satisfying the Claimants' Securities Claims

The SIPC Trustee has argued that he may not treat Claimants' claims as securities claims because: (1) he may not satisfy those claims by purchasing substitute securities; and (2) he may not value Claimants' fictitious MMF shares as of the filing date because the MMF never existed. The SIPC Trustee must therefore satisfy Claimants' claims with cash.

Trustees are obligated, to the extent possible, to deliver to customers "securities of the same class and series of an issuer" in satisfaction of customer net equity claims. 15 U.S.C. § 78fff–1(b)(1); *see id.* § 78fff(a)(1)(A); *see also id.* § 78fff–2(c)(2) (directing delivery of customer name securities). All securities are valued as of the close of business on the filing date. *Id.* § 78fff–2(b). Where trustees cannot satisfy net equity claims by delivering securities, they must satisfy those claims with cash advanced by SIPC. *Id.* §§ 78fff–2(b), 78fff–3(a).

■ The SIPC Trustee has no customer name securities to deliver and claims that he cannot purchase "securities of the same class and series of an issuer" with which to satisfy the Claimants' claims. *See id.* §§ 78fff–1(b)(1), 78fff(a)(1)(A); *see also id.* § 78fff–2(c)(2). The SIPC Trustee must

therefore satisfy Claimants' net equity claims with cash based on the number and value of MMF shares shown in the chart above, which is based on the Claimants' equity positions as stated in their final account statements and in New Age's and New Time's records. *See Id.* § 78fff–2(b); *see id.* § 78fff–3(a).

## CONCLUSION

The Claimants' objections to the SIPC Trustee's MMF claim determinations are sustained. The SIPC Trustee is ordered to treat the Claimants' MMF claims and dividend reinvestment claims as securities claims entitled to $500,000.00 of SIPC protection. The SIPC Trustee is further directed to satisfy those claims with cash.

SO ORDERED.